UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARL MAGBY,

                              Plaintiff,

                                                                           Case # 15-CV-285-FPG

v.

                                                                           DECISION AND ORDER

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.
_____

       Karl Magby ("Magby" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his application for Social Security Income ("SSI") under Title XVI of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

       Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 10, 13. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

       On March 30, 2012, Magby protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 111-16, 124, 135. He alleged that he had been disabled since November 8, 2007 due to a back injury and high blood pressure. Tr. 111, 135. After his application was denied at the initial administrative level, a hearing was held before Administrative Law Judge David S. Lewandowski ("the ALJ") on July 10, 2013 in which the ALJ considered Magby's application *de novo*. Tr. 32-59. Magby appeared at the hearing with his attorney and testified. *Id.* On October 9, 2013, the ALJ issued a decision finding that Magby

---

[1]     References to "Tr." are to the administrative record in this matter.

was not disabled within the meaning of the Act. Tr. 15-27. That decision became the Commissioner's final decision when the Appeals Council denied Magby's request for review on February 9, 2015. Tr. 1-5. Thereafter, Magby commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Magby's claim for benefits under the process described above. At step one, the ALJ found that Magby had not engaged in substantial gainful activity since March 30, 2012, the application date. Tr. 17. At step two, the ALJ found that Magby has the following severe impairments: degenerative joint disease of the lumbar spine, osteoarthritis of the bilateral knees, and obesity. Tr. 17-18. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 18-19.

Next, the ALJ determined that Magby retained the RFC to perform light work[2] except he can occasionally climb stairs, balance, and stoop, but he cannot kneel, crouch, or crawl or climb ladders, ramps, or scaffolds. Tr. 19-26. Magby needs a cane to ambulate, can occasionally push and pull, but cannot lift from floor to waist level or perform overhead activities. *Id.* Magby also must be able to alternate between sitting and standing as needed. *Id.* At step four, the ALJ found that this RFC prevents Magby from performing his past relevant work as a taxicab driver. Tr. 25-26. At step five, the ALJ relied on the VE's testimony and found that Magby is capable of making an adjustment to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 26-27. Specifically, the VE testified that Magby could work as a cashier, ticket taker, or file clerk. Tr. 27. Accordingly, the ALJ concluded that Magby was not "disabled" under the Act. Tr. 27.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

**II.     Analysis**

Magby argues that: (1) the ALJ erred by finding that he can perform light work even though he needs to use a cane; and (2) the ALJ failed to give the proper weight to his treating physician. ECF No. 7, at 8-12. These arguments are addressed in turn below.

**A.     Light Work and Cane Use**

Magby argues that the ALJ erred by finding that he can perform light work even though he needs to use a cane. ECF No. 10-1, at 12-14. The need to use a cane, however, does not automatically limit a claimant to sedentary work or render him or her disabled. In fact, courts have affirmed decisions where the ALJ found that the claimant could perform a reduced range of light work with the use of a cane. *See Rice v. Comm'r of Soc. Sec*, 114 F. Supp. 3d 98, 107 (W.D.N.Y. 2015); *Koszuta v. Colvin*, No. 14-CV-694-JTC, 2016 WL 231383, at *1 (W.D.N.Y. Jan 19, 2016), *vacated in part on other grounds*, 2016 WL 824445 (W.D.N.Y. Mar. 3, 2016). Here, the ALJ made a similar finding. He determined that Magby could perform light work with restrictions such as using a cane to ambulate, not lifting from the floor to waist level, not performing overhead activities, and having the ability to sit or stand at will. Tr. 19-26. These limitations reduce the range of light work as it is typically performed, *see* 20 C.F.R. § 416.967(b), and account for Magby's need to use a cane.

Magby cites two cases in support of his argument that he cannot use a cane and perform light work. The circumstances in those cases, however, are significantly different than the circumstances present here. In *Wright v. Colvin*, No. 6:13-cv-06585 (MAT), 2015 WL 4600287, at *4-5 (W.D.N.Y. July 29, 2015), the court found that the ALJ failed to properly consider whether it was medically necessary for the plaintiff to use a cane. Here, however, the ALJ clearly found that Magby's cane use was medically necessary because he accounted for such use

in the RFC determination. Tr. 19. The court in *Wright* also took issue with the fact that "[a]lthough the ALJ found Plaintiff capable of doing less than the full range of light work, he did not place any additional limitations on the amount Plaintiff was required to lift or the frequency with which he was required to perform lifting activities." *Wright*, 2015 WL 4600287, at *5. But here the ALJ incorporated Magby's cane use and additional lifting restrictions into the RFC determination.

Magby also cites *Miller v. Colvin*, No. 1:13-CV-1388 (GLS/ESH), 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015). In that case, the plaintiff argued that the ALJ erred when he failed to discuss, evaluate, and incorporate his need for a cane into the RFC determination. *Id.* Again, that clearly did not happen here because the ALJ accounted for Magby's cane use in the RFC determination.

Finally, the ALJ also complied with the suggestion in SSR 96-9p that an ALJ should consult a VE to determine whether an individual who needs to use a cane can adjust to other work. SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). At the hearing, the ALJ posed a hypothetical question to the VE that included the caveat that "the individual would use a cane to ambulate." Tr. 55. The VE opined that based on Magby's age, education, work experience, and RFC, he could work as a cashier, ticket taker, and file clerk. Tr. 55-58.

Accordingly, for all the reasons stated, the ALJ did not err when he determined that Magby could perform a reduced range of light work with the use of a cane.

### B.     Treating Physician Rule

Magby also argues that the ALJ improperly gave "little weight" to the opinion of his treating physician, Theodore Pettle, M.D. ("Dr. Pettle"). ECF No. 10-1, at 14-18. The Commissioner maintains that the ALJ applied the correct legal standards in evaluating Dr.

Pettle's opinion. ECF No. 13-1, at 18-21. This Court finds that the ALJ did not err when he evaluated Dr. Pettle's opinion.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); *see also* 20 C.F.R. § 416.927(c)(2). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. "The ALJ must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotation marks, alterations, and citations omitted); 20 C.F.R. § 416.927(c)(1)-(6).

Here, the ALJ discussed Dr. Pettle's opinion at length, and it is clear that he considered the requisite factors when he gave "little weight" to that opinion. Tr. 25. The ALJ noted, for instance, that Dr. Pettle examined Magby only three times before he completed the medical source statement (Tr. 25), which is a valid reason for assigning less weight to Dr. Pettle's opinion. 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

The ALJ also detailed the limitations that Dr. Pettle imposed, which the ALJ concluded were "extreme" because they were not supported by the medical evidence. Tr. 25; 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Pettle opined, for example, that Magby could walk less than one city block, stand for only ten minutes at a time, stand or walk less than two hours in an eight hour workday, sit for 30 minutes at a time, and sit a total of four hours in an eight hour workday. Tr. 25 (citing Tr. 483-86). Dr. Pettle also opined that Magby could "rarely" lift less than ten pounds, could never left ten or more pounds, and would be off task for 25% or more of the workday. *Id.*

The ALJ explained that these limitations conflicted with the treatment records, which documented "only crepitus and pain with palpitation and abnormal gait, while diagnostic imaging studies revealed mild to moderate osteoarthritis of the knees and degenerative changes in the lumbar spine." Tr. 25 (citing Tr. 613-36). Additionally, Dr. Pettle did not reference any range of motion findings to support the prescribed limitations. Tr. 25 (citing Tr. 620). Moreover, the ALJ reasoned that, although one x-ray showed *mild to moderate* osteoarthritis of

the left knee (Tr. 636), the majority of the medical records revealed only *mild* osteoarthritis of the left knee and only *questionable* minor degenerative changes of the right knee (Tr. 477). Tr. 25 (emphasis in ALJ's decision).

Magby also asserts that the ALJ erred when he gave greater weight to the opinions of consultative examiner Nikita Dave, M.D. and state agency review physician Mary L. Rees, M.D. than to Dr. Pettle's opinion. ECF No. 14, at 5. The ALJ gave "significant weight" to these opinions because he found that they were supported by relevant medical evidence and were consistent with the record as a whole. Tr. 24-25; *see also* 20 C.F.R. § 416.927(c)(3)-(4). Under the regulations, these are proper reasons to give great weight to a medical opinion, and "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citing 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e)); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Accordingly, for all the reasons stated, this Court finds that the ALJ properly evaluated Dr. Pettle's opinion and was entitled to give it "little weight" for the reasons set forth in the ALJ's decision.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 1, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court